**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – –X
COREEN J. BANDALOS,

*Plaintiff*,

**MEMORANDUM**
**AND ORDER**

-against-

23-cv-0135 (AMD) (JMW)

STONY BROOK UNIVERSITY MEDICAL
CENTER,

*Defendant*.

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – –X

**A P P E A R A N C E S:**

>    Coreen J. Bandalos
>    437 Browns Rd.
>    Nesconset, NY, 11767
>    *Appearing Pro Se*


>    Christopher Vance Coulston, Esq.
>    **Office of the New York State Attorney General**
>    28 Liberty Street
>    New York, NY 10005
>    *Attorney for Defendant*


**WICKS**, Magistrate Judge:

   *Pro se* Plaintiff Coreen J. Bandalos ("Plaintiff") alleges that her former employer Stony

Brook University Medical Center ("Defendant"), discriminated against her in violation of Title

VII of the Civil Rights Act of 1964. by refusing her requests for religious accommodation to

COVID-19 vaccine mandates under New York State law. *See generally*, ECF No. 1. Specifically,

Plaintiff asserts two causes of action pursuant to 42 U.S.C. §§ 2000e - 2000e-17: (i) disparate

treatment on the basis of religion, and (ii) discrimination through a failure to provide religious

1

accommodations. (*Id.*)  Following Defendant's successful motion to dismiss, Plaintiff was allowed to file an amended complaint to address various deficiencies identified in her original complaint. (ECF Nos. 15, 22.)  Now before the Court is Defendant's Motion to Stay Discovery pending the outcome of their Motion to Dismiss the Amended Complaint before the Honorable Ann M. Donnelly (ECF No. 30), which is opposed by Plaintiff (ECF No. 29). For the foregoing reasons, the Defendants' Motion to Stay (ECF No. 29) is hereby GRANTED.

## **BACKGROUND**

### I.   **Factual Background**

The following factual allegations are drawn from the original complaint, the judgment for the original complaint, and the amended complaint.  *See generally*, ECF Nos. 1, 15, 22. Plaintiff identifies as a "practicing Roman Catholic Christian" employed by Defendant for thirty-seven years before retiring.  (ECF No. 22 at ¶¶ 3-5.) Before resigning, Plaintiff was a nurse at Defendant's Breast Care Center. (*Id*. at ¶ 6.)

In August of 2021,  then-Governor Andrew Cuomo announced that all healthcare staff would be required to be vaccinated against COVID-19 before September 27, 2021, with religious and medical exceptions.  (ECF No. 15 at ¶ 7.)  The New York State Health Commissioner would issue a short-term emergency order on August 18, 2021, requiring hospitals to have all staff who fell within the definition of "personnel" be fully vaccinated.[1] (ECF No. 15 at 2.)  The New York State Department of Health ("DOH") passed a new regulation ("Section 2.61") on August 26, 2021, which required healthcare personnel to be fully vaccinated against COVID-19 by September 27, 2021, with exceptions for medical

---

[1] The emergency order defined personnel as "members of the medical and nursing staff . . . who engage in activities such that if they were infected with COVID-19, they could potentially expose, patients, residents, or personnel working for such entity to the disease." (ECF No. 15) (citing *Does 1-2 v. Hochul*, 632 F. Supp. 3d 120, 128-29 (E.D.N.Y. 2022)).

reasons only.[2] (ECF No. 22. at ¶¶ 8-10.)

On about September 9, 2021, Plaintiff submitted a request for a religious exemption to the COVID-19 vaccine. (*Id.* at ¶¶ 13-14; ECF No. 15. at 3.)[3]  Plaintiff's request for an exemption was due to the use of "fetal cell lines" in the "research and development of the [vaccines]," which Plaintiff claimed conflicted with her religious beliefs. (ECF No. 15. at 3.) (quoting (ECF No. 1 at 17.))  Following Plaintiff's first request for accommodations, Defendant informed her that the DOH removed the religious exemption in the COVID-19 vaccine mandate. (*Id.*)  Before Defendant issued their response to Plaintiff's request for religious accommodations, she submitted a second request on September 17, 2021. (*Id.*)  On about September 27, 2021, Plaintiff received a denial for her first application for religious accommodations, which also stated she had until October 4, 2021, to submit proof of receiving the first dose of the COVID-19 vaccine. (ECF Nos. 15 at 3, 22 ¶15.)  Her second exemption request was denied on September 29, 2021. (ECF No. 15 at 3.) The Nurse Manager told Plaintiff not to report for work on September 28, 2021, and that she would be placed on unpaid leave. (*Id.* at ¶16.)

After being informed she would be placed on unpaid leave, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on October 5, 2021. (*Id.* at ¶17.)  On about October 13, 2021, Plaintiff received her Notice of Suspension Without Pay for not receiving the initial dose of the COVID-19 vaccine, officially placing her on unpaid leave. (*Id.* at ¶18.)  On about September 12, 2022, Plaintiff, believing that her only options were to

---

[2] The new regulation, emergency regulation 10 NYCRR §2.61, used the same definition for personnel as the New York State Health Commissioner's short-term emergency order. (ECF No. 15 at 2).

[3] The Plaintiff's amended complaint states this event occurred on September 10, 2021, (ECF No. 22 at ¶¶13-14) but the Judgment for the original complaint states the request was submitted on September 9, 2021. (ECF No. 15. at 3)

either be fired or retire to preserve her pension and benefits, retired to maintain her benefits. (*Id.* at ¶20.)  Plaintiff received her Notice of Right to Sue letter from the EEOC on October 4, 2022. (*Id.* at ¶21.)

## II.    Procedural History

The Plaintiff commenced her initial action on January 9, 2023, alleging the two causes of action for Title VII discrimination. *See* generally, ECF No. 1. Specifically, Plaintiff alleged discrimination through disparate treatment and a failure to accommodate. (ECF No. 15 at 5, 8.) Defendant moved to have all claims asserted in the Complaint dismissed pursuant to Federal Rules of Civil Procedure 12(b)(6). (ECF No. 6.). Judge Donnelly granted the motion to dismiss on March 27, 2024. (ECF No. 15.)

When determining the Defendant's motion to dismiss, Judge Donnelly determined that Plaintiff's claims did not allege plausible allegations of disparate treatment, or a failure to accommodate. (*Id.* at 5, 8.)  The Plaintiff's disparate treatment claim was analyzed under the *McDonnell Douglas* burden-shifting framework, with the Court finding that she did not plausibly allege that she was qualified for her position. (*Id.* at 6.)  The COVID-19 vaccine became a condition of her employment under Section 2.61, meaning she was no longer qualified for her job by not obtaining the vaccine and her religious exemptions being denied.[4] (*Id.*)  Plaintiff also did not plausibly allege that religious discrimination motivated Defendant's conduct. (*Id.* at 7.)  Plaintiff argued that the timing of the rejection of her request was indicative of discrimination,[5] but that was deemed irrelevant "because [the timing] is not related to her

---

[4] Plaintiff was originally "unquestionably qualified for her position before the defendant instituted the vaccine requirement." (ECF No. 15 at 6.)

[5] Plaintiff claimed the timing of the denial of her exemption on September 27, 2021, which was received "approximately three minutes after [she] submitted [her] request." (ECF No. 15); (quoting (ECF No. 11 at 19-20)). But the Honorable Ann M. Donnelly addresses the timing alleged in the Plaintiff's complaint,

religion." (*Id.*); (citing *Andretta v. Napolitano*, 922 F. Supp. 2d 411, 422 (E.D.N.Y. 2013)). The Court concluded that Defendant was motivated to cooperate with Section 2.61, not to discriminate against Plaintiff, and Plaintiff did not identify "any similarly situated employees who were treated differently in a way that suggests that the timing of the [D]efendant's denial of her request was discriminatory." (*Id.*); (citing *Salas v. New York City Dep't of Investigation*, 298 F. Supp 3d 676, 688 (S.D.N.Y. 2018)).

The analysis of Plaintiff's claim for failure to provide religious accommodation began with determining if she established a *prima facie* case.  (*Id.* at 8.)  The Court determined that the original complaint did not allege that she requested accommodations,[6] only a "blanket exemption" was requested, which other courts have ruled cannot be granted. [7]  (*Id.* at 9).

However, even if Plaintiff established a *prima facie* case, her claim would be rejected because any accommodation would impose an undue burden on Defendant. (*Id.* at 8-11.)  The Court relied on a "long line of cases in the Southern and Eastern Districts of New York" regarding Title VII's application to Section 2.61, with those plaintiffs' claims being rejected and the court finding that "Title VII cannot be used to require employers to break the law." (*Id.* at 9.) (citing *Cagle v. Weill Cornell Med.*, No. 22-CV-6951, 2023 WL 4296119, at *4 (S.D.N.Y. June 30, 2023)).  Here, Plaintiff's case was ruled "indistinguishable" from those

---

where the September 27 request "was her second exemption request; she submitted her first request on September 9, 2021, 18 days before the defendant denied the request on September 27, 2021." (ECF No. 15) (citing (ECF No. 1; 8-1 at. 25, 27)).

[6] The only suggestion for an accommodation that would not be a blanket exemption was made in Plaintiff's opposition, which would be "a combination of personal protective equipment, testing, and 'moving exempt personnel to positions with less chance of exposure to Covid-19 within the hospital." (ECF No. 15) (quoting (ECF No. 11 at 14-17)).

[7] *St. Hillaire v. Montefiore Med. Ctr.*, No. 23-CV-4763, 2024 WL 167337, at *3 (S.D.N.Y. Jan. 16, 2024) ("Employees are not entitled to a blanket religious exemption allowing them to continue working at their current positions unvaccinated.")

plaintiffs whose claims were rejected. (*Id.*) Her position and ability to spread COVID-19 if infected had her covered by Section 2.61, so it would be impossible to grant her requested accommodation without violating New York law. (*Id.* at 9-10.) Even if Plaintiff worked remotely, Defendant would need another nurse to take on Plaintiff's duties or create a new position, both of which have been ruled as an undue burden in prior cases. (*Id.* at 10-11) (citing *Robinson v. Children's Hosp. Bos.*, No. 14-CV-10263, 2016 WL 1337255, at *8 (D. Mass. Apr. 5, 2016)) (citing *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 83 (1977)).

Plaintiff's amended complaint was filed on July 24, 2024. (ECF No. 22.) Following the Defendant's proposed briefing schedule for a motion to stay discovery (ECF No. 26.), Plaintiff submitted a memorandum of law in opposition to the Defendant's motion to stay discovery on August 16, 2024. (ECF No. 29.) The Defendant's motion to stay was filed on September 9, 2024 (ECF No. 30), along with a memorandum in support of the motion (ECF No. 31) and a Reply Memorandum in support of their motion to stay. (ECF No. 32.)

### III.   <u>The Parties' Contentions</u>

Defendant asserts support for their motion to stay by stating that Plaintiff's amended complaint must be dismissed because (i) the amended complaint relies on the same arguments that were previously rejected in the original complaint; and (ii) there is good cause to stay because the motion to dismiss is dispositive and well-grounded. *See generally*, ECF No. 31 at 1. Defendant also claims Plaintiff will not be prejudiced by staying discovery since their motion to dismiss will potentially eliminate the entire action, and the passing of the motion to stay will only cause a slight delay in discovery until the motion to dismiss is decided. (*Id.* at 8.) Finally, Defendant argues that not passing this motion would greatly prejudice them since discovery would place a substantial burden on them as any public resources used for discovery

would be wasted if the motion to dismiss was granted.[8] (*Id.* at 9-10.)

      In her opposition, Plaintiff begins her arguments opposing the stay motion by stating that the motion to stay is premature since the motion to dismiss has not been filed yet. *See generally*, ECF No. 29. Plaintiff's second argument is that the motion to stay is not appropriate because (i) she has presented cognitive arguments in her amended complaint that give rise to significant questions; (ii) the Defendant has not shown that discovery would be overly burdensome or prejudicial since there is currently no clear idea of the breadth of discovery; and (iii) any level of prejudice would be unfair and staying discovery would impede her ability to respond to the motion to dismiss and prove her claim.[9] (*Id.* at 8-9.)

      Plaintiff's final argument is that the Defendant will not be prejudiced if their motion is denied since (i) Defendant's arguments are based on conjecture, (ii) they will be in no worse condition if the motion to dismiss is not granted, and (iii) the cases that Defendant relies on were only about motions to dismiss that were already filed. (*Id.* at 10.)

      Defendant's reply memorandum in support of its motion to stay also addressed the points raised in Plaintiff's opposition. (ECF No. 32.) Defendant first argues that Plaintiff: (i) has not addressed Defendant's primary argument that the motion to dismiss will be filed by September 20, 2024, which will likely be dispositive, (ii) has not contended that the motion to dismiss will fail to meet its standard, and (iii) has not shown how the amended complaint remedies the problems of the original complaint. (*Id.* at 1-3.) Defendant's reply memorandum also claims Plaintiff failed to show she would be prejudiced since the discovery she stated she

---

[8] Defendant is a hospital that is also a public entity.

[9] The kind of evidence that Plaintiff states the stay would prevent her from obtaining that is critical to her case is evidence that her presence at the hospital posed any risk to patients, staff, or herself. (ECF No. 29 at 6.)

needed would be preserved during a motion to dismiss.[10]

## DISCUSSION

"'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Thomas v. N.Y. City Dep't of Educ.*, No. 09-CV-5167, 2010 WL 3709923, at *2 (E.D.N.Y. Sept. 14, 2010) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). The mere filing of a dispositive motion in and of itself does not halt discovery obligations in federal court.[11] That is, a stay of discovery is not warranted, without more, by the mere pendency of a dispositive motion. *Weitzner v. Sciton, Inc.*, No.CV 2005-2533, 2006 WL 3827422, at *1(E.D.N.Y. Dec. 27, 2006). Rather, the moving party must make a showing of "good cause" to warrant a stay of discovery. *Chesney v. Valley Stream Union Free Sch. Dist. No. 24*, 236 F.R.D. 113, 115 (E.D.N.Y. 2006). In evaluating whether a stay of discovery pending resolution of a motion to dismiss is appropriate, courts typically consider: "(1) whether the Defendants has made a strong showing that the plaintiff's claim is unmeritorious; (2) the breadth of discovery and the burden of responding to it; and (3) the risk of unfair prejudice to the party opposing the stay." *Id.* (citation omitted). "Courts also may take into consideration the nature and complexity of the action, whether some or all of the Defendants have joined in the request for a stay, and the posture or stage of the litigation." *Id.* (citation omitted).

---

[10] When discussing the evidence that Plaintiff argued would cause prejudice if the motion to stay was granted, Defendant states that type of evidence will be preserved while the motion to dismiss is pending, and that the delay caused by granting the motion to stay since the motion to dismiss would be based on the factual record of the case. (ECF No. 32 at. 3).

[11] Contrast this with New York state court practice which expressly provides for a stay of discovery pending the filing of a dispositive motion. See N.Y. CPLR 3214(b) (automatic stay of "disclosure" upon service of dispositive motion).

"Upon a showing of good cause[,] a district court has considerable discretion to stay discovery pursuant to Rule 26(c)." *Al Thani v. Hanke,* 20-CV-4765 (JPC), 2021 WL 23312, at *1 (S.D.N.Y. Jan. 4, 2021) (alteration in original) (quoting *Republic of Turkey v. Christies, Inc.*, 316 F. Supp. 3d 675, 677 (S.D.N.Y. 2018)). In assessing good cause, Courts look to "the particular circumstances and posture of each case." *Ellington Credit Fund, Ltd. v. Select Portfolio Servs., Inc.*, No. 08 Civ. 2437 (RJS), 2008 WL 11510668, at *2 (S.D.N.Y. June 12, 2008) (quoting *Hachette Distrib., Inc. v. Hudson Cnty. News Co.*, 136 F.R.D. 356, 358 (E.D.N.Y. 1991)). *Au fond,* the specific facts, circumstances, and context of the case guide the court.

Here, the Court finds "good cause" to stay discovery in light of the Defendant's arguments in their Rule 12(b)(6) motion for the reasons outlined below.[12] *First,* the arguments Defendant sets forth, at least on their face, make a strong showing that Plaintiff's Title VII claims of disparate treatment and failure to provide religious accommodations in her amended complaint, on the merits, have not presented a plausible claim to relief.  A plaintiff can avoid dismissal when their complaint pleading presents "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  A claim does not require "detailed factual allegations" to be plausible, but it must present more than just "labels and conclusions" or "a formulaic recitation of the elements of a cause of action[.]" *Twombly*, 550

---

[12] The Court's consideration and analysis of the arguments set forth in Defendant's motion to dismiss Plaintiff's Complaint under Fed. R. Civ. P. Rule 12(b)(6) is purely for purposes of weighing whether a stay should be granted.  This analysis should not in any way be construed as the Court prejudging the merits or predicting the outcome of the motion to dismiss before Judge Donnelly.

U.S. at 555.  If a complaint only "tenders naked assertions devoid of further factual enhancement[,]" it will fail to state a claim. *Iqbal*, 556 U.S. at 678.

To succeed on her Title VII disparate treatment claim, Plaintiff must make a *prima facie* case by showing that "'(1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination.'" *Walsh v. N.Y. City Hous. Auth.*, 828 F.3d 70, 75 (2d Cir. 2016); (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 (2d Cir. 2009)).  Once a *prima facie* case is established, "'the burden must shift to the employer to articulate some legitimate, nondiscriminatory reason' for the adverse employment action." *United States v. Brennan*, 650 F.3d 65, 93 (2d Cir. 2011) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  If an employer can show a legitimate, nondiscriminatory reason for their actions, "[t]he burden then shifts back to the plaintiff 'to show that [the defendant's] stated reason for [the adverse employment action] was in fact pretext.'" *Id.* (alteration in original); (quoting *McDonnell Douglas*, 411 U.S. at 804).

The Plaintiff successfully pled element one by stating to be a member of the Roman Catholic Church. *Lotosky v. Univ. of Rochester*, 192 F. Supp 2d 127, 134 (W.D.N.Y. 2002). The Plaintiff has also successfully pled the third element by claiming she was suspended without pay. *Turner v. Nat'l R.R. Passenger Corp.*, 181 F. Supp 2d 122, 134 (N.D.N.Y 2002). However, while Plaintiff meets elements one and three of establishing a *prima facie* case, her claim is insufficient in meeting elements two and four.

The second element of establishing a *prima facie* case will likely not be met because Plaintiff has not presented a plausible pleading that she would be qualified for her position *after Section 2.61 was passed*. While Plaintiff was undisputably qualified before Section 2.61

10

due to her thirty-seven years of experience, her amended complaint fails to understand that "Section 2.61 ultimately changed [her] job requirements to include that she must be vaccinated with one of the COVID-19 vaccines unless she received an authorized exemption." *Tandian v. State Univ of N.Y.*, 698 F. Supp. 3d 425, 439 (N.D.N.Y. 2023); *see also We The Patriots USA, Inc. v. Hochul*, 17 F. 4th 266, 293-94 (2d Cir. 2021), *cert denied sub nom. Dr. A. v. Hochul*, 142 S. Ct. 2569 (2022) ("Vaccination is a condition of employment in the healthcare field. . . ."). Because the Plaintiff's job required vaccination, she cannot be qualified for her position because she did not receive the vaccine or an exemption.

The fourth element of establishing a *prima facie* case will also likely not be met because the Plaintiff has made no argument in her amended complaint to show that the denial of her accommodation requests or her suspension without pay gives rise to an inference of discrimination. To address the Court's findings on her initial complaint, Plaintiff attempts to support the fourth element of a disparate treatment *prima facie* in her amended complaint by establishing a *prima facie* argument for a completely different charge, a Title VII failure to provide religious accommodations. Plaintiff's amended complaint, like her original, fails to identify any similarly situated employees of a different religion who were treated differently from her in a way that would suggest that the denial of her religious accommodations was discriminatory. *Salas v. New York City Dep't of Investigation*, 298 F. Supp 3d 676, 688 (S.D.N.Y. 2018).

A claim for Title VII discrimination for failing to provide religious accommodations requires a Plaintiff to make a *prima facie* case showing that "(1) she had a bona fide religious belief conflicting with an employment requirement, (2) she informed her employer of this belief, and (3) was disciplined for failing to comply with the employment requirement."

11

*Cagle.*, 2023 WL 4296119, at *3; (citing *Knight v. Conn. Dep't of Pub. Health*, 275 F.3d 156, 167 (2d Cir. 2001)).  If a *prima facie* case is made, the burden shifts to the employer, who must either provide a reasonable accommodation or show that providing an accommodation would result in an undue burden.  *Id.* (citing *Baker v. Home Depot*, 445 F. 3d 541, 546 (2d Cir. 2006)).  An undue burden occurs "when the 'accommodation would result in substantial increased costs in relation to the conduct of [an employer's] particular business.'" *Id.* (alteration in original) (citing  Groff v. DeJoy, 600 U.S. 447, 470 (2023)) *see also Hardison*, 432 U.S. at 84 ("To require [an employer] to bear more than a de minimis cost [to provide a religious accommodation] . . . is an undue hardship.").

Plaintiff has not shown a bona fide religious belief regarding the COVID-19 vaccine. While her amended complaint alleges that she held a bona fide belief against the COVID-19 vaccine for its usage of fetal cell lines during development, she has not provided any facts that Roman Catholicism has a sincere belief against the COVID-19 vaccine. *Id.* (citing *McKinley v. Princeton Univ.*, 2023 U.S. Dist. LEXIS 75602, 2023 WL 3168026, at *2 (D.N.J. Apr. 28, 2023) ("Without [p]laintiff providing facts showing what sincerely held religious belief she holds that prevented her from complying with COVID-19  Policies, [p]laintiff fails to adequately allege a cognizable claim for religious discrimination.").  Despite Plaintiff's amended complaint alleging that she informed her employer of this belief and was disciplined for not complying with this employment requirement, the lack of proof for a bona fide belief prevents the showing of a *prima faice* case.

However, even if Plaintiff can show a bona fide religious belief against the COVID-19 vaccine, her claims are likely to nevertheless fail in the face of Defendant's argument that it would result in an undue burden.  The Courts within this Circuit have already heard a "long

line of cases" considering Section 2.61's application to religious beliefs, and they have

"uniformly rejected claims that an employer is required by Title VII to accommodate a request

for a religious exemption" because granting this accommodation would violate New York law.

*Id.* (collecting cases); *see also Dennison v. Bon Secours Charity Health Sys. Med. Grp., P.C.*,

2023 WL 3467143, at *5 (S.D.N.Y. May 15, 2023) ("Title VII cannot be used to require

employers to break the law.")

  Even if Plaintiff's requested accommodations were not illegal, other possible

accommodations such as remote work would likely have resulted in an undue burden.  The

circumstances of this case practically mirror *Shahid-Ikhlas v. New York*, where the court held

that "[a]t a minimum, [the plaintiff] would be unable to perform patient care duties requiring

physical contact with patients and, thus, [the defendant] would have to require another nurse to

cover those duties or hire a replacement nurse. Either option would impose a cost on [the

defendant] of the kind the Supreme Court has found to be *more than de minimis*." *Shahid-

Ikhlas v. New York*, 1:22-cv-10643, 2023 U.S. Dist. LEXIS 79099, at *15 (S.D.N.Y. 2023)

(emphasis added); (citing *Hardison*, 432 U.S. at 84).

  *Second*, the breadth of discovery presented by Defendant favors stay because the

parties could avoid substantial burden and waste of precious resources by staying discovery

until the motion to dismiss is decided. This would be especially prudent to the Defendant, a

public entity, and discovery "would result in a substantial diversion of public resources which

may not be ultimately necessary in this action." *Chesney v. Valley Stream Union Free Sch.

Dist. No. 24*, 236 F.R.D. 113, 116 (E.D.N.Y. 2006).

  *Third*, the Court does not find that a stay would result in any material prejudice to the

Plaintiff, especially since a motion to dismiss was previously granted for this case.  The

arguments Defendant presented indicate their motion to dismiss has the potential to dismiss the entire action, and "[a] stay pending determination of a dispositive motion that potentially eliminates the entire action will neither substantially nor unduly delay the action, should it continue." *Sali v. Zwanger & Pesiri Radiology Grp., LLP*, No. 19-CV-00275, 2022 U.S. Dist. LEXIS 48699, at *16 (E.D.N.Y. Jan. 10, 2022) (alteration in original) (quoting *Spinelli v. NFL,* No. 13 CV 7398, 2015 U.S. Dist. LEXIS 155816, at *2 (S.D.N.Y. Nov. 17, 2015). In contrast to Plaintiff's opposition, which does not explain how granting the motion to stay will prejudice her.[13] *See generally* ECF No. 29.

Any delay caused by this motion to stay would likely not be prejudicial to Plaintiff since Defendant submitted their motion to dismiss on September 20, 2024, and the stay period will "be lifted upon the District Judge's decision on the [motion] to dismiss." *NRA of Am. v. Cuomo*, 2020 WL 7338588, at *4 (N.D.N.Y. Dec. 14, 2020). Considering that a motion to dismiss was previously granted for this case, "it would seem unlikely that the [motion] would remain unaddressed for a significant length of time." *Id.*; (citing *Spencer Trask Software & Information Servs., LLC v. Rpost Int'l Ltd.*, 206 F.R.D. 367, 368 (S.D.N.Y. 2002)). Accordingly, weighing all the relevant factors, the Court finds that a stay of discovery pending the outcome of Defendant's Rule 12(b)(6) motion is warranted.

## CONCLUSION

For the foregoing reasons, good cause exists warranting the issuance of a stay of discovery pending the outcome of Defendant's Rule 12(b)(6) motion to dismiss. Accordingly,

---

[13] Plaintiff's Opposition to Defendant's motion to stay only states that "any prejudice would be unfair" and that allowing Defendant's motion to stay would prejudice Plaintiff by "impeding her ability both to respond to the motion to dismiss and to prove her claim." This would not be prejudicial to Plaintiff since a motion to dismiss would only concern her amended complaint, and if it presented "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Defendant's motion to stay discovery (ECF No. 30) is **GRANTED**.  In the event the pending motion to dismiss is denied, the parties are directed to file within ten days of the issuance of the Order on that motion a proposed discovery schedule for the undersigned's consideration.

Dated:   Central Islip, New York
         September 24, 2024

                              **S O  O R D E R E D:**

                              /s/ *James M. Wicks*
                                  JAMES M. WICKS
                              United States Magistrate Judge

15