UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                        :

**COREEN BANDALOS**,               :

                 Plaintiff,       :

                                   :     **MEMORANDUM DECISION AND ORDER**

           – against –          :

                                   :     23-CV-135 (AMD) (JMW)

**STONY BROOK UNIVERSITY MEDICAL CENTER**,                      :

                     Defendant.       :
-------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

The *pro se* plaintiff alleges that the defendant, her former employer, discriminated against her on the basis of her religion when it denied her request for a religious exemption from the New York State Department of Health's vaccine mandate requiring certain healthcare workers to be vaccinated against COVID-19. Before the Court is the defendant's motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the defendant's motion is granted and this action is dismissed.

## BACKGROUND[1]

The plaintiff commenced this action on January 9, 2023. (ECF No. 1.) The Court granted the defendant's motion to dismiss the original complaint for failure to state a claim, but granted the plaintiff leave to amend. (*See* ECF No. 15.) The plaintiff filed the amended

---

[1] The facts are drawn from the amended complaint; the documents attached as exhibits; the plaintiff's opposition to the motion to dismiss; and the documents attached to the defendant's motion to dismiss, to which the plaintiff refers in the complaint. *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (a court "may consider factual allegations made by a *pro se* party in [her] papers opposing" a motion to dismiss, so long as they are consistent with the facts raised in the complaint); *Castiblanco v. Am. Airlines, Inc.*, No. 17-CV-5639, 2019 WL 4751880, at *6 (E.D.N.Y. Sept. 29, 2019) (considering a document "which is attached to Defendant's motion to dismiss, because it is referenced by the amended complaint and is relied on by Plaintiff").

complaint on July 29, 2024, asserting the same claim — discrimination on the basis of her religion. (ECF No. 22.) The defendant moves to dismiss the amended complaint in its entirety for failure to state a claim. (ECF Nos. 34–36.) The Court assumes familiarity with the underlying facts of this case, which are discussed in detail in the Court's memorandum decision granting the defendant's first motion to dismiss (ECF No. 15 at 1–4), but restates the relevant facts in brief.

On August 26, 2021, in the midst of the COVID-19 pandemic, New York State's Department of Health adopted emergency regulation 10 N.Y.C.R.R. § 2.61. (ECF No. 22 at 3.) *See also Does 1-2 v. Hochul*, 632 F. Supp. 3d 120, 130 (E.D.N.Y. 2022) (arising out of the same underlying facts), *aff'd in part, vacated in part,* No. 22-2858, 2024 WL 5182675 (2d Cir. Dec. 20, 2024). Section 2.61 required that covered entities, including the defendant, "continuously require personnel to be fully vaccinated against COVID-19, with the first dose for current personnel received by September 27, 2021 for general hospitals." 10 N.Y.C.R.R. § 2.61(c). It further defined "personnel" as employees "who engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease." *Id.* § 2.61(a)(2). "While this regulation contained an exemption for medical reasons, it did not include any religious exemptions." *Hochul*, 2024 WL 5182675, at *1 (citing 10 N.Y.C.R.R. § 2.61(d)).

When the vaccine mandate was adopted, the plaintiff, a "practicing Roman Catholic," was a nurse in the Breast Care Center of the defendant hospital. (ECF No. 22 at 2, 5.) That same month, the plaintiff spoke to her supervisor about potential accommodations that would allow her to continue working for the defendant hospital without being vaccinated. (*Id.* at 8.) Specifically, she offered to test herself daily and wear additional personal protective equipment.

(*Id.*)  The plaintiff also asked to be transferred to a separate area of the hospital where she "could not expose personnel, patients, or residents" to the virus, if she had it.  (*Id.*)

Around September 10, 2021, the plaintiff formally requested a religious exemption from the vaccination policy, because she objected to the use of "fetal cell lines" in the "research and development of the . . . vaccines," which she said conflicted with her religious beliefs.  (*Id.* at 2, 3, 18–20, Exhibit B (Request for Religious Exemption from the COVID-19 Vaccine).)  The plaintiff made this request by filling out a "Request for Religious Exemption from the COVID-19 Vaccine" form, which the defendant provided.  (*Id.*)  She also submitted a letter entitled "Statement of Religious Belief Demand for Accommodations."  (*Id.* at 3–4, 22–24, Exhibit C (Statement of Religious Belief Demand for Accommodation).)  In that letter, the plaintiff proposed using "proper precautions, social distancing, and PPE" instead of getting vaccinated; she asserted that those alternatives "accomplished the same goal without interfering with a person's religious freedom."  (*Id.* at 24.)[2]

In a September 27, 2021 letter, the defendant notified the plaintiff that her exemption request was "denied" after "careful review" of "whether it could be accommodated without undue hardship."  (ECF No. 36-1 (Defendant's response to Plaintiff's EEOC Charge of Discrimination and Supporting Exhibits) at 25, Exhibit D (September 27, 2021 Letter).)  The defendant notified the plaintiff again that her exemption request had "been considered and denied" on September 29, 2021.  (*Id.* at 27, Exhibit E (September 29, 2021 Letter).)  The defendant advised the plaintiff that it was placing her "on a leave without pay . . . until October

---

[2] The plaintiff framed her request in the context of the Religious Freedom Restoration Act and the First Amendment.  (ECF No. 22 at 22–23.)  Therefore, she described these alternatives to vaccination as "a less restrictive means of furthering the State[']s interest."  (*Id.* at 24.)  Reading the *pro se* amended complaint to raise the strongest arguments it suggests, the Court construes this letter as a request for these accommodations.

6, 2021," to "allow [her] time to comply with the State Department of Health's vaccine mandate." (*Id.*)  The letter further warned that if the plaintiff did not comply with the mandate, she would "be suspended without pay pending termination." (*Id.*)  On October 5, 2021, the defendant sent the plaintiff two additional letters in which it reminded her that it had denied her request for a religious exemption; the defendant also extended her deadline for compliance to October 12, 2021.  (*Id.* at 28–29, Exhibit E (October 5, 2021 Letters).)  The plaintiff did not get vaccinated, and the defendant issued her a "Notice of Suspension Without Pay" on October 13, 2021.  (*Id.* at 31, Exhibit F (Notice of Suspension Without Pay); ECF No. 1 at 18.)  On October 15, 2021, the defendant sent a "Notice of Discipline" with a "proposed penalty" of termination because the plaintiff did not comply with the vaccine mandate.  (ECF No. 36-1 at 38–39, Exhibit H (Suspension Termination Notice of Discipline).)  The plaintiff resigned from her position on September 12, 2022.  (ECF No. 22 at 4.)

The plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission on October 5, 2021, and she received a Notice of Right to Sue on October 4, 2022. (ECF No. 22 at 4, 29–36.)

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must allege 'enough facts to state a claim to relief that is plausible on its face.'"  *New Yorkers for Religious Liberty, Inc. v. City of New York*, 125 F.4th 319, 327 (2d Cir. 2024) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is plausibly alleged when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Matzell v. Annucci*, 64 F.4th 425, 433 (2d Cir. 2023)).  Although "detailed factual allegations" are not required, a complaint that includes only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at

555.  A complaint fails to state a claim "if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citations and alterations omitted).

Because the plaintiff is proceeding *pro se*, the Court construes her complaint liberally and evaluates it by "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).  The plaintiff's claims must be read "to raise the strongest arguments that they suggest." *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 387 (2d Cir. 2015) (citations omitted).  As ever, in reviewing a motion to dismiss under Rule 12(b)(6), the Court "accept[s] all factual allegations [in the amended complaint] as true and draw[s] all reasonable inferences in the plaintiff['s] favor." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021).

## DISCUSSION

At the pleading stage, a plaintiff asserting a Title VII discrimination claim must allege facts showing that (1) the employer discriminated against her by subjecting her to an adverse employment action; and (2) that action was "because of" the plaintiff's "race, color, religion, sex, or national origin" — that is, that the plaintiff's protected characteristic "was a 'substantial' or 'motivating' factor contributing to the employer's decision to take the action." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015); *see also* 42 U.S.C. § 2000e-2(a)(1).  A plaintiff does not need to plead specific facts to support a *prima facie* case of discrimination to survive a motion to dismiss.  *Id.*  However, she must plausibly allege that she "is a member of a protected class, was qualified [for her position], suffered an adverse employment action, and . . . at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015).

*See also Buon v. Spindler*, 65 F.4th 64, 79 (2d Cir. 2023) (discussing the pleading standard for claims under Title VII).

Title VII further "requires employers to accommodate the religious practice of their employees unless doing so would impose an 'undue hardship on the conduct of the employer's business.'" *Groff v. DeJoy*, 600 U.S. 447, 453–54 (2023) (quoting 42 U.S.C. § 2000e(j)). To state a claim for religious discrimination for failure to accommodate, the plaintiff must plausibly allege "that (1) she had a bona fide religious belief conflicting with an employment requirement, (2) she informed her employer of this belief, and (3) was disciplined for failing to comply with the employment requirement." *Cagle v. Weill Cornell Med.*, 680 F. Supp. 3d 428, 435 (S.D.N.Y. 2023). In other words, a plaintiff may state a claim for religious discrimination under Title VII by pleading that the employer "refus[ed] to accommodate [a] religious practice." *Vasquez v. City of New York - Off. of Mayor*, No. 22-CV-5068, 2024 WL 1348702, at *5 (E.D.N.Y. Mar. 30, 2024) (quoting *Grimes v. N.Y. & Presbyterian Hosp.*, No. 23-CV-652, 2024 WL 816208, at *5 (S.D.N.Y. Feb. 26, 2024)); *see also E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 772 n.2 (2015) (an adverse employment action that is "'because of' the plaintiff's 'religious practice' . . . . is *synonymous* with refusing to accommodate the religious practice." (emphasis in original)).

A defendant may raise the affirmative defense that granting an accommodation would be an undue hardship on a Rule 12(b)(6) motion "if the defense appears on the face of the complaint." *Vasquez*, 2024 WL 1348702, at *7 (quoting *D'Cunha v. Northwell Health Sys.*, No. 23-476, 2023 WL 7986441, at *2 (2d Cir. Nov. 17, 2023)); *see also New Yorkers for Religious Liberty, Inc.*, 125 F.4th at 333–34 (affirming dismissal for failure to state a claim where accommodation would result in undue hardship). "In order to demonstrate an 'undue hardship,'

an employer must show that the burden of granting an accommodation 'is substantial in the overall context of [the] employer's business.'" *Id.* (quoting *Groff*, 600 U.S. at 468). The result is "a modified, two-step inquiry for analyzing Title VII religious discrimination claims that emanate from a failure to accommodate." *Beickert v. New York City Dep't of Educ.*, No. 22-CV-5265, 2023 WL 6214236, at *2 (E.D.N.Y. Sept. 25, 2023) (citing *Baker v. Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006) and *Knight v. Connecticut Dep't Pub. Health*, 275 F.3d 156, 167 (2d Cir. 2001))).

## I.     Failure to Accommodate

The parties do not dispute that the plaintiff has pled that her bona fide religious belief conflicted with an employment requirement, that she informed her employer of this belief, and that she suffered an adverse employment action. (ECF No. 22 at 7–8; ECF No. 35 at 6, 10–13). The defendant maintains, however, that the accommodation the plaintiff sought posed an undue hardship because it would have required the defendant to violate the state vaccine mandate. (ECF No. 36 at 11.) The Court considers this argument because the amended complaint alleges that the requested accommodations did not pose an undue hardship on the defendant. (ECF No. 22 at 8–12.)

The plaintiff's claim fails because her exemption request would have imposed an undue hardship on the defendant. In dismissing the plaintiff's original complaint, the Court explained that "[a] 'long line of cases in the Southern and Eastern Districts of New York have considered the application of Section 2.61's Mandate to persons whose religious beliefs allegedly conflict with the taking of a COVID-19 vaccine,' and those cases have 'uniformly rejected claims that an employer is required by Title VII to accommodate a request for a religious exemption from the Mandate at the cost of violating Section 2.61 and thus New York law.'" (ECF No. 15 at 9

(quoting *Cagle*, 680 F. Supp. 3d at 436).)  *See also Brown v. S. Shore Univ. Hosp.*, 762 F. Supp. 3d 191, 210 n.13 (E.D.N.Y. 2025) (collecting cases).  In short, "Title VII cannot be used to require employers to break the law."  *Dennison v. Bon Secours Charity Health Sys. Med. Grp., P.C.*, No. 22-CV-2929, 2023 WL 3467143, at *5 (S.D.N.Y. May 15, 2023).

The claims in the amended complaint, like those in the first complaint, are indistinguishable from the claims in the cases cited above.  (*See* ECF No. 15 at 9.)  As she did in her first complaint, the plaintiff asserts that the defendant violated Title VII by denying her a religious exemption from the state's COVID-19 vaccine mandate.  The plaintiff, a nurse in the Breast Care Center, was covered by the New York rule's definition of "personnel," because she "could potentially expose other covered personnel [or] patients . . . to the disease."  10 NYCRR § 2.61(a)(2).  Moreover, the plaintiff does not dispute that she asked for a religious exemption to the Mandate.

Courts in this circuit have uniformly held that the Mandate did not permit employers to grant covered employees a blanket religious exemption; therefore, accommodating the plaintiff's request for a religious exemption would have violated the Mandate and imposed an undue hardship on the defendant.  *See We The Patriots USA, Inc. v. Hochul* ("*We The Patriots II*"), 17 F.4th 368, 370 (2d Cir. 2021) ("To repeat: if a medically eligible employee's work assignments mean that she qualifies as 'personnel,' she is covered by the Rule and her employer must 'continuously require' that she is vaccinated against COVID-19."); *Haczynska v. Mount Sinai Health Sys., Inc.*, 738 F. Supp. 3d 300, 322–23 (E.D.N.Y. 2024) (collecting cases and holding that the defendant "would have suffered an 'undue hardship' if forced to grant religious exemptions [from § 2.61] to Plaintiffs because they would have violated state law"); *Cagle*, 680

F. Supp. 3d at 436 (same).  Accordingly, the defendant did not violated Title VII when it denied the plaintiff's request for an accommodation in the form of a religious exemption.[3]

The plaintiff also alleges that she made specific requests for accommodations, not simply a request for a blanket religious exemption.  She spoke with a supervisor in August 2021 and offered to submit to daily testing at her own expense and to wear additional personal protective equipment; she also asked "to be moved to a different area within the employer's facility that would prevent interaction with employees and patients."  (ECF No. 22 at 8.)  The plaintiff further explains that she made the exemption request on a form that the defendant gave to her, and that she attached a letter requesting an accommodation.  (*See id.* at 8; 18–20, Exhibit B; 22–24, Exhibit C.)[4]

Under Title VII, the defendant might have been required to accommodate the plaintiff's request to be moved to a different area, because the Mandate "on its face, does not bar an

---

[3] In her opposition, the plaintiff cites Justice Gorsuch's dissent from the Supreme Court's denial of injunctive relief in *Dr. A v. Hochul*, 142 S. Ct. 552 (2021) (Gorsuch, J., dissenting).  Justice Gorsuch would have enjoined the state from enforcing the Mandate, because in his view the applicants were likely to succeed on the merits of their First Amendment challenge.  *Id.* at 553.  But as the defendant notes, a dissenting opinion — even one written by a Supreme Court justice — is not binding on this Court and has no precedential value.  This would be the case even if there were no Second Circuit case on point; here, however, not only is there controlling Second Circuit precedent, but the dissenting opinion the plaintiff cites was a dissent from the Supreme Court's decision not to disturb one of the Second Circuit opinions that binds the Court on this very issue.  *See id.*; *see also Dr. A. v. Hochul*, 142 S. Ct. 2569 (2022) (denying petition for certiorari).

[4] The plaintiff seems to suggest that she asked for a blanket exemption because that was the only option on the form that the defendant provided.  It is a reasonable argument, but ultimately irrelevant.  The "Request for Religious Exemption from the COVID-19 Vaccine" form states that "'covered personnel' as defined by the order of the Department of Health are required to be fully vaccinated, subject to limited exemptions," and notes the Mandate's definition of personnel.  (ECF No. 22 at 18, Exhibit B.)  It also asks the applicant to acknowledge and affirm her understanding that if the defendant grants the request for an exemption, the applicant may be subject to additional restrictions, including frequent testing and requirements to wear personal protective equipment.  (*Id.* at 20.)  The plaintiff could have concluded reasonably that filling out the form was her only option to request an accommodation.  But the plaintiff alleges that she also sent a letter entitled "Demand for Accommodations" and that she spoke to a supervisor about additional accommodations that might have been available to her.  (*Id.* at 8, 22–24, Exhibit C.)  In any event, even if the wording of the form suggested that the religious exemption was the only possible accommodation, that accommodation would have caused an undue hardship.

9

employer from providing an employee with a reasonable accommodation that removes the individual from the scope of the Rule." *We The Patriots USA, Inc. v. Hochul* ("*We The Patriots I*"), 17 F.4th 266, 292 (2d Cir.)*, opinion clarified,* 17 F.4th 368 (2d Cir. 2021). In other words, if the defendant could have moved the plaintiff to a part the facility without creating an undue burden — meaning that she would not be "personnel" under the Mandate — the plaintiff would have been entitled to that accommodation pursuant to Title VII. *See, e.g.*, *Grimes*, 2024 WL 816208, at *5 (denying motion to dismiss a similar claim where the plaintiff "allege[d] that for fifteen years prior to the Mandate's implementation, she worked fully remotely (with no patient or employee contact), with the exception of her attendance at a monthly meeting").

The plaintiff says that she could have worked in a call center, as she did between April and July 2020, giving callers information about the pandemic. (ECF No. 22 at 11–12.) The defendant could have granted this accommodation, the plaintiff maintains, without expending any additional resources or creating a position that did not exist. (*Id.*) Therefore, the accommodation would not have been an undue hardship for the defendant.

The defendant claims that moving the plaintiff to the call center would have caused an undue hardship (ECF No. 35 at 17), citing the Court's observation in the March 27, 2024 order that "even if [the plaintiff] could perform some tasks remotely, it is inescapable, . . . [that] any accommodation that would entirely remove [her] . . . from all in-person interaction with patients and staff" would burden the defendant; "[a]t a minimum, [the plaintiff] would be unable to perform patient care duties requiring physical contact with patients and, thus, [the defendant] would have to require another nurse to cover those duties or hire a replacement nurse." (ECF No. 15 at 10–11 (quoting *Shahid-Ikhlas v. N.Y. & Presbyterian Hosp., Inc.*, No. 22-CV-10643, 2023 WL 3628151, at *5 (S.D.N.Y. May 5, 2023), *report and recommendation adopted*, 2023

WL 3626435 (S.D.N.Y. May 24, 2023)); *but cf. Groff*, 600 U.S. at 473 ("Faced with an accommodation request [not to work on the Sabbath], it would not be enough for an employer to conclude that forcing other employees to work overtime would constitute an undue hardship. Consideration of other options, such as voluntary shift swapping, would also be necessary.") However, at that point, the Court was dealing in abstracts, because the plaintiff did not allege that she asked for this accommodation.

In the context of the amended complaint, the defendant has not shown that granting the plaintiff's request to be moved to the call center would have caused "a burden [that was] substantial in the overall context of an employer's business." *Groff*, 600 U.S. at 468. The defendant says that the plaintiff does not allege that the defendant was still operating the call center in August 2021. (ECF No. 35 at 12.) In fact, the plaintiff alleges that the call center position "already existed," and that "the Defendant did not have to create a position to accommodate the Plaintiff," which suggests that the call center was still operational, and which the Court must accept as true. (ECF No. 22 at 12.) Even without that allegation, though, the defendant's claim that it would be an undue hardship to restart the call center — an affirmative defense — is not evident on the face of the complaint. *See Iowa Pub. Emps.' Ret. Sys.*, *v. MF Glob., Ltd.*, 620 F.3d 137, 145 (2d Cir. 2010) (explaining that an "affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6) . . . if the defense appears on the face of the complaint").

But even this does not save the complaint. The plaintiff still would have been covered by the Mandate's definition of "personnel," even if she worked at the call center, because she would have been in contact with other employees. Indeed, the plaintiff alleges that approximately four employees worked in the call center at any given time, albeit while socially distancing. (*See*

ECF No. 22 at 11.)  The plaintiff also contends that she worked in a clinic outside of the main hospital building, which had "individual work areas as opposed to shared work areas," and which required fewer in-office hours than working at a nurse at the main hospital building.  (ECF No. 40 at 16–17.)  But these allegations do not exclude the plaintiff from the Mandate's definition of personnel or otherwise mitigate the undue hardship that the requested accommodation would cause the defendant.  Even if the plaintiff was less likely to "expose other covered personnel [or] patients . . . to the disease" than, for example, an emergency room nurse, the Mandate covers all employees who "could potentially" expose others to COVID-19, which certainly included the plaintiff.  *See* 10 NYCRR § 2.61(a)(2).

Accordingly, the plaintiff does not state a claim for failure to accommodate because the requested accommodations would not have removed the plaintiff from the Mandate's definition of "personnel" and therefore would have imposed an undue burden on the defendant.[5]

## II.    Inference of Discrimination

Construing the amended complaint liberally, the plaintiff presses a separate claim for religious discrimination, unrelated to the failure to accommodate — a claim of discrimination other than the denial of the plaintiff's request for religious accommodation.

The amended complaint alleges that the defendant changed its vaccination requirements in February 2022 — "during the pandemic" — to allow covered employees to continue working at the hospital even if they had not gotten the COVID-19 vaccine booster shot.  (ECF No. 22 at 6; 26, Exhibit D.)  The plaintiff maintains that the defendant violated the Mandate by instituting

---

[5] The plaintiff argues that there are unresolved "factual issues" about whether there was an accommodation that would not have caused the defendant "undue hardship."  (ECF No. 22 at 14–17.) Nothing in this opinion depends on unresolved factual issues that require discovery.  The affirmative defense appears on the face of the amended complaint, the amended complaint details the additional accommodations that the plaintiff requested, and courts have consistently found that granting a religious exemption to the Mandate would impose an undue hardship.

this change because covered personnel would not be "fully vaccinated" if they did not receive the booster shot.  (*Id.* at 6; ECF No. 40 at 8.)  Reading the amended complaint to raise the strongest arguments it suggests and accepting the facts in the amended complaint as true, the Court construes this argument to be one supporting an inference of discrimination: that the defendant changed its policy to allow personnel who were not fully vaccinated to continue in their roles, while prohibiting the plaintiff, who was not vaccinated because of a religious objection, from continuing in her role may be "plausible support to a minimal inference of discriminatory motivation." *Buon*, 65 F.4th at 83 (quoting *Littlejohn*, 795 F.3d at 311).  The defendant does not address this change in policy.

Nevertheless, the plaintiff does not allege sufficient facts to state a claim on this theory of discrimination.  The defendant explained in its announcement of the policy change — which the plaintiff attached to the amended complaint — that "***the State will no longer enforce the booster requirement***."  (ECF No. 22 at 26, Exhibit D (emphases in original).)  It is thus evident from the face of the amended complaint that the policy change was consistent with the Mandate, and that the defendant did not, as the plaintiff alleges, violate the Mandate by dropping the booster requirement.  Accordingly, the plaintiff's suggestion that the defendant was willing to violate the Mandate when it was faced with non-religious objections is belied by the documents she attached to the complaint.

In any event, and as the Court previously held, the plaintiff does not plausibly allege that she was qualified for her position at the time of her suspension.  (*See* ECF No. 15 at 6–7.)  The plaintiff, a "Teaching and Research Center Nurse II" who treated patients at the Stony Brook Medical Center in the Breast Care Center, was unquestionably qualified for her position before the Mandate.  As the plaintiff concedes, however, the defendant's adoption of the COVID-19

vaccination requirement, which it had to do to comply with the Mandate, created a new "condition of employment." (ECF No. 40 at 8.) In other words, the vaccine mandate "changed [the plaintiff's] job requirements to include that she must be vaccinated with one of the COVID-19 vaccines unless she received an authorized exemption." *Tandian v. State Univ. of N.Y.*, 698 F. Supp. 3d 425, 439 (N.D.N.Y. 2023).

The plaintiff argues that a condition of employment is different from a qualification for employment and that a person may be qualified for a job even if she does not satisfy the conditions of employment. She defines "conditions of employment" as "elements such as rules, policies, and requirements that an employer and employee agree to during the employee's time with the employer." (ECF No. 40 at 14.) By contrast, "qualifications of employment are the requirements a candidate needs to qualify and be successful in a specific role of employment, such as years of experience, degree level, certifications, licensure, training in her field, and core competencies." (*Id.*)[6]

This Court and other courts in this circuit have rejected the plaintiff's argument. "[W]here a hospital imposed a COVID-19 vaccination requirement as an employment requirement and an employee failed to comply with that requirement, the employee was not qualified for their position for purposes of bringing a Title VII employment discrimination claim." *Brown*, 762 F. Supp. 3d at 207 (collecting cases). The plaintiff did not get the vaccine, and the defendant denied her request for an exemption. Accordingly, she did not meet the requirements for her position and was not qualified for her position at the time of her suspension in October 2021.

---

[6] The plaintiff does not cite any case law or other authority to support these definitions.

The plaintiff has not plausibly alleged religious discrimination.  Accordingly, that claim is dismissed.[7]

## III.    Leave to Amend

The plaintiff asks that the Court grant leave to amend if it dismisses her amended complaint.  (ECF No. 40 at 17.)  "Although district courts generally grant *pro se* plaintiffs leave to amend a complaint, that leave may be denied when a plaintiff has already been given an opportunity to amend."  *Zaerpour v. Bank of Am. Corp.*, No. 23-845, 2024 WL 2069555, at *2 (2d Cir. May 9, 2024) (citing *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)).  "[I]t is within the sound discretion of the district court to grant or deny leave to amend."  *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019) (quoting *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018)).

Further leave to amend is not warranted when the "problem with [the plaintiff's] causes of action is substantive" and "better pleading will not cure it."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).  As explained in this decision and the Court's previous order, the problems with the plaintiff's Title VII discrimination claims are substantive, meaning "[r]epleading would . . . be futile."  *Id.*; *see also Cobham v. N.Y. Racing Ass'n, Inc.*, No. 22-CV-456, 2024 WL 4198453, at *10 (E.D.N.Y. Sept. 16, 2024) ("[A]mendment by a *pro se* party may be denied as futile where, as here, the pleading's deficiencies cannot be cured.").  Accordingly, the Court denies the plaintiff further leave to replead those claims.

---

[7] In her opposition, the plaintiff suggests for the first time that she is bringing claims pursuant to § 1983, the First and Fourteenth Amendments, the New York State Human Rights Law, and the New York City Human Rights Law.  (ECF No. 40 at 4.)  "Even a plaintiff proceeding pro se may not raise entirely new causes of action for the first time in [her] opposition papers."  *Herrera v. Navient Corps.*, No. 19-CV-6583, 2020 WL 3960507, at *5 (E.D.N.Y. July 13, 2020) (internal quotation marks omitted).  The Court therefore does not address these claims.

## CONCLUSION

For these reasons, the defendant's motion to dismiss is granted in its entirety.

The Clerk of Court is respectfully directed to enter judgment, to close this action, to mail

a copy of this Memorandum and Order to the plaintiff, and to note the mailing on the docket.


**SO ORDERED.**

_____
s/Ann M. Donnelly

ANN M. DONNELLY
United States District Judge


Dated:  Brooklyn, New York
        August 18, 2025